IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | | |
|---|---|---|
| NICHOLAS HANYOK | ) | |
| 300 Cathedral Street Apt 208 | ) | |
| Baltimore, Maryland 21201 | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil No. |
| | ) | |
| ROME TECHNOLOGIES, INC. | ) | |
| 2421 Mountain Road | ) | |
| Passadena, MD 21122 | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) | |
| _____ | ) | |

## COMPLAINT

Plaintiff Nicholas Hanyok ("Plaintiff" or "Mr. Hanyok"), by and through his attorney, David Baña, brings this action against Defendant Rome Technologies, Inc. ("Defendant" or "Rome Tech" or "Company") to redress unlawful discrimination in employment pursuant to Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991, and in support thereof states as follows:

## NATURE OF THE ACTION

1.    Through this action, Plaintiff seeks injunctive relief, compensatory and punitive damages, back pay, reinstatement or front pay, interest on back pay, and reasonable attorney's fees and costs arising from the severe and pervasive sexual harassment he endured at the hands of the Company's President Scott Rome.

## PARTIES

2.      Plaintiff Nicholas Hanyok is an adult male who resides in Baltimore City, Maryland.

3.      Defendant Rome Technologies Inc. is a corporation organized under the laws of the State of Maryland with its principal place of business located in Maryland.

4.      At all relevant times, Rome Tech has been continuously doing business and has employed at least 15 employees in the State of Maryland.

5.      At all relevant times, Rome Tech has engaged in commerce both inside and outside of the State of Maryland.

6.      At all relevant times, Defendant has been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e (b), (g), and (h).

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because this action is brought pursuant to Title VII of the Civil Rights Acts of 1964, as amended, 42 U.S.C. § 2000e *et seq.* and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

8.      Personal jurisdiction is proper because Defendant conducts business in the State of Maryland.   Venue is proper in this District because Plaintiff worked for Defendant at a facility located in this District and because Defendant's principal place of business is located in this District.

## ADMINISTRATIVE PREREQUISITES

9.      Mr. Hanyok has satisfied all administrative prerequisites and fulfilled all conditions precedent to instituting an action pursuant to Title VII by timely filing a Charge of Discrimination (Charge No. 531-2018-02002) with the U.S. Equal Employment Opportunity Commission's ("EEOC") Baltimore Field Office regarding Defendant's discriminatory conduct on November 2, 2018.  Mr. Hanyok also previously filed an intake questionnaire with the EEOC's Baltimore Field Office addressing Defendant's discriminatory conduct on April 09, 2018.

10.      The EEOC issued a Right To Sue Notice to Mr. Hanyok with a "Date Mailed" date of March 9, 2020.

## STATEMENT OF CLAIMS

### Factual Background

11.      Defendant provides niche software to the automobile collision repair industry.

12.      Scott Rome ("Mr. Rome" or "Harasser") (male) is Defendant's founder and President.

13.      Mr. Rome is a self-described conservative Christian.

14.      Mr. Rome takes a very "hands on" approach in the management of his company and is very much involved in the day to day operation of Defendant Rome Technologies, Inc.

15.     Throughout Mr. Hanyok's employment Defendant did not have an employee handbook, nor did it have any written anti-discrimination or anti-harassment policies.  Moreover, Defendant did not have a dedicated Human Resources department.

16.     Indeed, the only guidance employees received concerning how to handle concerns about possible discrimination or harassment consisted of statements regularly made (approximately 2 or 3 times per month) by Mr. Rome exclusively to male employees that only applied to male employees.  In these statements, Mr. Rome made it clear that if any employee felt uncomfortable or expressed displeasure with his conduct, they could simply quit, or if they refused to quit, he would fire them.  Specifically, Mr. Rome regularly announced that employees that did not like the way that he behaved could leave and stated that he didn't care about "weak people," stated that he would never have a Human Resources department because "if you need to go to HR then you're not tough enough to work" at Rome Tech, and would mention that he had been sued before and had  $2 million in insurance to protect him from "pussy assholes who don't have tough skin."

17.     Plaintiff Mr. Hanyok worked as Defendant's Marketing Director from May 22, 2017 until he was constructively discharged on April 10, 2018.

18.     During the hiring process, Mr. Hanyok interviewed with Mr. Rome for the position of Marketing Director.  Mr. Rome advised Mr. Hanyok that his annual salary would be $55,000 (fifty-five thousand dollars) per year, and that he would receive two weeks of paid vacation, one week of paid sick leave, and a 4% (four percent) 401K

match. Mr. Rome also advised Mr. Hanyok that he would be eligible to participate in the Company's zero deductible health insurance plan after three months of employment.

19.     At all times during his employment with Rome Tech, Mr. Hanyok reported directly to Mr. Rome.  Mr. Rome was Mr. Hanyok's direct and only supervisor.  Mr. Rome was the only person with the authority to change or alter Mr. Hanyok's terms and conditions of employment.

20.     After Mr. Hanyok started working at Rome Tech, Mr. Rome reneged on his earlier promises and informed Mr. Hanyok that he was only going to pay him an annual salary of  $50,000 but that he would give him a $2,500 raise after 90 days.  He also told Mr. Hanyok that he could not participate in the 401K program until after 90 days.

21.     Out of a fear of being fired, Mr. Hanyok did not to complain to Mr. Rome about the last-minute changes to the terms of his employment.

22.     At approximately three months after he began employment, Mr. Hanyok sent Mr. Rome a friendly reminder via email regarding Mr. Rome's promises for health insurance, the 401K plan match, and the $2,500 raise.  In that email, Mr. Hanyok expressed that he enjoyed working with his fellow colleagues as part of the "Rome Team" and that he enjoyed performing the work involved in his job.

23.     Although Mr. Hanyok always enjoyed performing the work necessary to market the Company's software, he quickly found the hostile work environment created by Mr. Rome intolerable.

### Mr. Rome Sexually Harasses Mr. Hanyok and Creates a Hostile Work Environment

24.     Throughout Mr. Hanyok's employment at Rome Tech, Mr. Rome persistently made comments revealing his preoccupation or fascination with penises, homosexuals, and homosexual sex to Mr. Hanyok almost daily.

25.     For example, in describing the sales process to Mr. Hanyok and other male employees, Mr. Rome consistently used analogies to compare the sales process to male on male sexual encounters.  Mr. Rome described the sales process as "sucking these assholes' dicks then making sure they bust where you want them to," and stated that if he is able to get far enough in a presentation with a customer, he would let them "bang [him] in the ass" with questions until they "bust."

26.     Throughout Mr. Hanyok's nearly full year of employment at Rome Tech, Mr. Rome persistently drew analogies between the sales process and male on male sexual encounters in the presence of, or directly to Mr. Hanyok.  Mr. Rome was always careful to not say these things in front of female employees, only male employees.  Mr. Hanyok did not indicate in any way whatsoever that he welcomed that manner of speaking.   In fact, Mr. Hanyok would reveal his discomfort with the sexually explicit comments by leaning away, looking down, keeping quiet, or ignoring the comments altogether.

27.     Mr. Rome also used sexually pejorative terms on a daily basis to describe both people and objects.  Throughout Mr. Hanyok's employment, Mr. Rome persistently used the terms "cocksucker," "faggot," "dickhead," "queer," "gay," "gayest," "bitch," and "pussy" in the presence of, or directly to, or in referring to Mr. Hanyok.

28.     For example, on or about May 25, 2017, during a meeting with Mr. Rome, Mr. Hanyok, Sales Director James Rome (male), who is Mr. Rome's son, and a 4th employee named Johnathan (male), who supported the Sales team, Mr. Rome described the necklace Johnathan was wearing as "the gayest" and "that fucking gay thing" and compared it to "a fucking dog collar" he said he had given to his "bitch."  He followed these comments by quoting Bible passages about sinful people who became better after accepting Jesus into their lives.  Mr. Hanyok did not participate in the harassment or indicate in any way whatsoever that he welcomed that manner of speaking.  He simply kept his head down and was prepared to take notes once the meeting moved on to legitimate business.

29.     During a one-on-one meeting with Mr. Hanyok on or about June 14, 2017, Mr. Rome mentioned that a former employee who had disclosed too much personal information only worked for the company for a couple of days.  He then told Mr. Hanyok that Mr. Hanyok "could be a fag" and he "wouldn't care" but added, "Don't tell me about your personal life."

30.     However, Mr. Rome routinely tried to solicit personal information from Mr. Hanyok and other male employees.  Mr. Rome often asked Mr. Hanyok if he had a girlfriend and asked him if he lived alone or with someone else.  Mr. Hanyok would respond to these types of questions by saying that he preferred to keep those aspects of his personal life private.

31.     Throughout Mr. Hanyok's employment at Rome Tech, Mr. Rome persistently referred to the Company's customers as "pussies," "pussy assholes,"

7

"niggers," "rich white assholes," and "bitches" — on an almost daily basis — and in the presence of, and in speaking to Mr. Hanyok.  Mr. Rome would not use these terms in reference to the Company's customers in front of female employees.

32.     For example, on or about June 19, 2017, in a meeting between Mr. Rome, Mr. Hanyok, and James Rome (son), Mr. Rome repeatedly referred to a customer as a "fucking pussy bitch" and said he was tired of dealing with "fucking pussy assholes."  He also told Mr. Hanyok that Mr. Hanyok was a "fucking slow retard" and a "fucking idiot" and said the notes he had taken "sound[ed] gay as shit."  Mr. Hanyok did not indicate in anyway whatsoever that he welcomed this harassment.  He simply kept his head down and prepared to take notes once the meeting moved on to legitimate business.

33.     Mr. Rome's highly offensive name-calling was not an isolated incident. Throughout Mr. Hanyok's nearly one year of employment with Rome Tech, Mr. Rome would often, and at least two times per week, call Mr. Hanyok a "fucking idiot," a "retard," a "bitch," or some other derogatory term.  Mr. Rome would often refer to Mr. Hanyok's work as "gay," and the "gayest."  Mr. Rome did not directly call female employees "fucking idiot[s]," "retard[s]," or "bitch[es]" or use any other derogatory terms when speaking to women.  Mr. Rome did not describe the work product of female employees to them as "gay," or "gayest" or use any other derogatory terms to describe their work product in their presence.

34.     For example, during a meeting between Mr. Rome, Mr. Hanyok, and James Rome (son) regarding sales campaigns on or about July 20, 2017, Mr. Rome told Mr. Hanyok that the suggestions he made were "the fucking gayest shit" he had ever heard

and said, "My customers are fucking rich white assholes. They won't like this pussy bullshit."  Mr. Hanyok did not indicate in any way whatsoever that he welcomed this harassment.  He simply kept his head down and noted that Mr. Rome did not approve of his suggestions.

35.     In a meeting with Mr. Rome, Mr. Hanyok, James Rome (son), and Database Manager Luci Packett (female) (who participated in the meeting over the phone) on July 27, 2017, Mr. Rome said in reference to the design Mr. Hanyok had created, "I like it, but it's a little too queer. Ya think ya have it in you to man it up some?" In contrast, Mr. Rome was perfectly cordial and professional when he spoke to Luci during the call.

36.     However, later that day — after the meeting and after Luci was no longer on the phone — Mr. Rome said to Mr. Hanyok about Luci, "She is the most useless fucking cunt here.  She's nothing but a corporate cocksucker and she has no balls…. She's a stupid fucking dyke.  I mean, she's not even gay. She has kids.  But what she is, is a dumb fucking bitch."  Mr. Hanyok did not respond to Mr. Rome or join in disparaging Ms. Luci Packett or otherwise indicate in any way whatsoever that he welcomed the use of the words "cunt," "cocksucker," "fucking dyke," or "dumb fucking bitch."

37.     While Mr. Rome used those sexually explicit words around men daily, he was very careful not to speak in this manner to or in front of female employees.

38.     For example, when in the presence of female employees, Mr. Rome would preach to the men in the office and tell them that they need to treat women like "queens" and he would refer to female office employees as "queens" in a sincere tone.

39.     IT Director for Rome Tech, Andy Peet — an older gentleman — remarked that Mr. Rome treated the women that worked for him "like gold," and that he was only abusive to men, especially the younger men.

40.     During a meeting with Mr. Rome, Mr. Hanyok, James Rome (son), General Manager Darren Cook (male), and Director of Training Joe Wesacavage (male) on or about September 27, 2017, Mr. Rome said of his workforce, "I have a few women working for me and I have younger people and older people.  I got a black guy.  I even have a gay guy.  I mean, you're gay, aren't ya, Nick?"  Mr. Rome said this while looking directly at Mr. Hanyok.  Moreover, Mr. Hanyok was the only person named Nick in the room.   Mr. Hanyok ignored the statement and immediately left the room when the meeting adjourned.

41.     In a meeting with Mr. Rome, Mr. Hanyok, and James Rome (son) on or about October 4, 2017, Mr. Rome said that the customer he had been talking to on the phone was "such a faggot" and he "bet all his employees are useless niggers." Mr. Hanyok did not indicate in anyway whatsoever that he welcomed or approved the use of the words "faggot," or "niggers."  He did not respond to Mr. Rome's comments.

42.     On or about November 9, 2017 Mr. Rome called Mr. Hanyok in the middle of the workday and told him that he was drinking some "amazing liquor."  Mr. Rome was slurring his speech as he told Mr. Hanyok that he loved Mr. Hanyok and that Mr. Hanyok

was doing good work, and that he was sorry if he was hard on him.  Mr. Hanyok did not respond to Mr. Rome telling him that he loved him.

43.     Mr. Rome generally called Mr. Hanyok about 2 or 3 times per month throughout Mr. Hanyok's employment with Rome Tech to brag about the expensive liquor he was drinking.  In these phone conversations, Mr. Rome's speech was slurred but understandable.  During some of these conversations, Mr. Rome would apologize for his behavior toward Mr. Hanyok and he would tell Mr. Hanyok that he loved him.  Mr. Hanyok would either not respond or change the subject whenever Mr. Rome told him that he loved him.

44.     Mr. Rome often grabbed Mr. Hanyok by the shoulders or put his arms around Mr. Hanyok and would say that he didn't hate Mr. Hanyok and that he actually really liked him.  Mr. Hanyok would try to get away whenever Mr. Rome would touch him.  Nevertheless, the offensive behavior continued.

45.     On or about November 28, 2017, in a meeting between Mr. Rome, Mr. Hanyok, and Mr. Hanyok's assistant Robert Edge (male), Mr. Rome said, "You and Robert are my bitches.  I love having bitches."  He then explained that "bitches" meant people to do whatever he wanted.  Neither Mr. Hanyok nor Mr. Edge engaged Mr. Rome.  Mr. Hanyok put his head down and continued to take notes.

46.     On or about November 29, 2017, Mr. Rome, Mr. Hanyok, Mr. Cook and, Mr. Peet were walking to the conference room for a meeting when Mr. Rome said, "What a great group of kids here, right?  But, no one is gay here, are they?  I'm a fucking homophobe."  Mr. Rome went on to say while looking directly at Mr. Hanyok and

deliberately making eye contact with him, "I said, I'm homophobic.  I don't care.  I have insurance to protect me."

47.     During a conversation with Mr. Hanyok and Mr. Edge later that same day, Mr. Rome suggested that he himself wear a speedo to get people's attention at an upcoming NADA workshop presentation and said, "Ya like that thought, don't ya Nick? I bet you do."  Mr. Hanyok ignored the comment and shook his head in disbelief.

48.     On or about November 30, 2017, as Mr. Rome was walking away following a discussion with Mr. Hanyok and Mr. Edge, Mr. Rome said that "gay people ain't so bad."  When Mr. Hanyok asked who his comment was directed at, Mr. Rome responded, "Well, you're gay, aren't ya Nick?"  Mr. Hanyok did not respond or otherwise indicate in any way whatsoever that he welcomed those types of questions.

49.     On or about December 1, 2017, in a discussion with Mr. Rome, Mr. Hanyok, Mr. Edge, and Mr. Peet, Mr. Rome said in reference to the Company's new branding that Mr. Hanyok and Mr. Edge had been working on, "Well, I guess gays are good for something.  They've made ya look good, right?"  Mr. Hanyok did not respond or otherwise indicate in any way whatsoever that he welcomed those types of questions.

50.     During a phone call on or about December 2, 2017, Mr. Rome acknowledged that he had treated Mr. Hanyok "unfairly" and had been "inappropriate" but said, "That's who I am.  My mother is a raging cunt and that's why I do it to you…. I mean well, you know.  You're an easy target, so that's why I treat ya shitty, but it's just joking and picking on ya.  You're totally an easy target."

51.     On or about February 14, 2018, in a meeting between Mr. Rome, Mr. Hanyok, and Mr. Edge, Mr. Rome said of a rendering of a trade show booth display that Mr. Hanyok and Mr. Edge worked on that the color pink is "gay," that the trade show was "very masculine" and "manly," that there was "no time for fucking gay ass pink," and that that was not how we were going to represent the company.  He also said part of the display looked like a penis then commented, "That's probably why you like it, right Nick?"  Mr. Hanyok did not respond or otherwise indicate in any way whatsoever that he welcomed questions about penises.

52.     Throughout Mr. Hanyok's employment, Mr. Rome would regularly (about 2 or 3 times per month) brag about being able to do or say anything he wanted because he had insurance that would protect him in a harassment lawsuit.  Moreover, he would openly brag about his willingness to fire any employee who engaged in protected activity. One such incident occurred on or about March 2, 2018, when Mr. Rome said — while making direct eye contact with Mr. Hanyok — "If someone can't handle it here, then they are fucking weak.  I don't want weak pussies here."  He also stated that he did not "give a fuck about the pussy run EEOC" and that "any weak ass pussies" could sue him because he had "pussy insurance."  Mr. Hanyok did not respond to his comments.

53.     Mr. Edge had reported to Mr. Hanyok that on or about March 30, 2018, during a meeting with Mr. Rome, James Rome (son), Mr. Wesacavage, and Mr. Edge (Mr. Hanyok was not at this meeting), Mr. Rome said that a customer was "stupid" and referred to the customer as a "nigger."  He then looked at Mr. Edge (Mr. Edge is Black) and told Mr. Edge that he "didn't mean it that way" and asked Mr. Edge to "promise to

forgive" him.  When Mr. Edge said he couldn't do that, Mr. Rome responded, "Well, if you have to leave us, I understand."  After Mr. Edge reported what happened to Mr. Hanyok, Mr. Hanyok apologized and encouraged Mr. Edge to take a long lunch or break until he felt able to return to the office.

54.     On or about April 10, 2018, Mr. Hanyok requested and participated in a meeting with Mr. Rome and Mr. Cook where Mr. Hanyok reported the incident Mr. Edge relayed to him, complained that Mr. Rome's use of terms like "nigger," cocksucker," and "faggot" when speaking to him and others in the office was disgusting and embarrassing, and specifically requested that he immediately stop because his behavior was making Mr. Hanyok uncomfortable.  Mr. Rome asserted that the words didn't mean anything, that he did not mean to be disrespectful, and that he was raised in a different time.  However, after Mr. Hanyok reiterated that Mr. Rome's actions were offensive and hurtful.  Mr. Rome then agreed to stop.

55.     Although Mr. Rome apologized and assured Mr. Hanyok that he would refrain from such behavior going forward, less than an hour later he came to Mr. Hanyok's office and announced in the presence of his colleagues that he was going to start referring to Mr. Hanyok as "Nicki" because he was "being sensitive" and "having a sensitive day."  Given that Mr. Rome obviously did not take Mr. Hanyok's complaint seriously and intended to persist in the harassing behavior, Mr. Hanyok felt he had no choice but to tender his resignation.

56.     Following Mr. Hanyok's resignation, Rome Tech contested his application for unemployment benefits by falsely denying that Mr. Hanyok quit for good cause due

to harassment and discrimination.  This resulted in Mr. Hanyok's benefits initially being denied and forced Mr. Hanyok to file an appeal — which Mr. Hanyok won.  Because of Rome Tech's conduct, Mr. Hanyok's benefits were delayed by several months.

**COUNT I**
**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, 42 U.S.C. § 2000e *et seq*.**

57.    Plaintiff realleges and incorporates by reference each and every allegation contained in each and every aforementioned paragraph as though fully set forth herein.

58.    Plaintiff suffered sexual harassment at the hands of Defendant's President and founder in the form of a hostile work environment.  The Harasser's conduct was severe in that he would use derogatory and pejorative language daily in the course of conducting business.  The Harasser trained Plaintiff on the company's sales process by describing it "sucking these assholes' dicks then making sure they bust where you want them to," and that prospective customers should "bang [him] in the ass" with questions until they "bust."  The Harasser would refer to the Company's customers in the Plaintiff's presence as, among other things "faggot[s]," "nigger[s]," and "fucking pussy assholes." The Harasser would describe the Plaintiff's work product to the Plaintiff as, among other things "the fucking gayest shit," "gay," and "fucking gay ass pink."  The Harasser would describe the Company's employees, in the presence of the Plaintiff as, among other things "cunt[s]," "cocksucker[s]," "fucking dyke[s]," and "faggot[s]."  The Harasser would give feedback to the Plaintiff on his work product by stating, "Well, I guess gays are good for something.  They've made you look good right?" The Harasser would refer

to the Plaintiff — in the Plaintiff's presence — as, among other things, a "fucking slow retard," "fucking idiot," and a "bitch[]."  The Harasser did not use these terms out of a business necessity.  Moreover, the Harasser harassed the Plaintiff on a personal level. The Harasser would tell the Plaintiff that he loved him numerous times.  The Harasser would persistently ask the Plaintiff if he was gay.  The Harasser would insist that the Plaintiff likes penises. The Harasser would touch and hug the Plaintiff.

59.     The Harasser's conduct was pervasive.   The Harasser persistently and consistently engaged in a highly offensive, unwelcomed speech and conduct either directed at the Plaintiff or in the presence of the Plaintiff non-stop, for almost an entire year, in the office setting of a software company.

60.     At all times, the Harasser's speech and conduct was unwelcomed by the Plaintiff.  The Plaintiff never indicated in any way whatsoever that he welcomed the Harasser's speech or conduct.

61.     The Harasser's speech and conduct was sufficiently offensive to create an environment that would be viewed by the reasonable person as hostile or abusive.

62.     At all times Plaintiff considered the Harasser's unwelcomed speech and conduct highly offensive.  Because of the Harasser's highly offensive, unwelcome speech and conduct, Plaintiff suffered emotional distress, embarrassment, humiliation, mental anguish, loss of enjoyment of life, depression, anxiety, severe stress, and loss of sleep. This led Plaintiff's performance at work to suffer.

63.     But-for Plaintiff's gender (male) he would not have suffered the abuse and hostility at the hands of Mr. Rome.  If Mr. Hanyok were a female, he would have been

treated by Mr. Rome like "a queen" or like "gold."  If Mr. Hanyok were female, he would have been treated by Mr. Rome in a cordial, professional, and respectful manner.  Mr. Rome persistently and consistently engaged in a highly offensive, unwelcomed speech and conduct either directed at the Plaintiff or in the presence of the Plaintiff because he was male.

64.    Mr. Scott Rome — the Harasser — was at all relevant times the President of Rome Tech.  The President is the highest-ranking officer of the Company.  The Harasser was at all relevant times Plaintiff's direct and immediate supervisor.  At all relevant times, the Harasser had the authority over Plaintiff to promote, demote, set pay, fire, hire, change assignments, change working conditions, and set or change employment policies that affected the Plaintiff.

65.    Defendant Rome Tech did not act reasonably in preventing and/or correcting acts of sexual harassment.  The Company's anti-harassment policy was conceived of and communicated (orally) exclusively to male employees by the Harasser. The anti-harassment policy provided that if an employee complained about harassment they were considered a "weak ass pussy" and that the only available redress was to quit or get fired and file a complaint with the "pussy run EEOC."  From there, if the aggrieved employee were to file a lawsuit, the Company would presumably put its "pussy insurance" carrier on notice that a "pussy asshole who don't have tough skin" has sued the Company.  As ridiculous as it sounds, this was in-fact Defendant Rome Tech's anti-harassment policy.  Rome Tech did not have an employee handbook, nor did it have any written anti-harassment or anti-discrimination policies that it distributed, published, or

otherwise made available to employees.  Mr. Rome's statements were the only guidance employees received concerning how to handle concerns about possible discrimination or harassment.

66.     Because the Harasser was the President of the Company, and because of the Harasser's preemptive hostility toward employees who would potentially complain about harassment, it would have been futile for Plaintiff to invoke the Company's draconian anti-harassment process.  Therefore, Plaintiff acted reasonably in not immediately complaining about the Harasser's conduct.

67.     Plaintiff resigned because the circumstances of discrimination made the Plaintiff's working conditions so intolerable that a reasonable employee in the Plaintiff's position would have felt compelled to resign.  Plaintiff's working conditions went well beyond what a reasonable person would consider difficult or unpleasant.  Shortly after Plaintiff complained of the harassment and the Harasser agreed to stop, the Harasser later entered Plaintiff's office and engaged in highly offensive speech.

68.     Consistent with the Harasser's prior statements with respect to employees that complain, the Harasser harassed Mr. Hanyok after he complained because he did not want Mr. Hanyok working there any longer.  The Harasser was motivated and intended to make Plaintiff's work environment so intolerable that he would have felt compelled to resign.

**COUNT II**
**RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT**
**OF 1964, AS AMENDED, 42 U.S.C. § 2000e *et seq*.**

69.     Plaintiff realleges and incorporates by reference each and every allegation contained in each and every aforementioned paragraph as though fully set forth herein.

70.     Through Defendant's actions complained of in paragraphs 52 through 56, Defendant retaliated against Mr. Hanyok in violation of Section 704(a) of Title VII by falsely contesting his application for unemployment benefits because of Mr. Hanyok's opposition to Rome Tech's unlawful employment practices.

71.     The effect of the practices complained of in paragraphs 52 through 56 has been to deprive Mr. Hanyok of access to unemployment benefits which he rightfully qualified for because he engaged in activity protected by Title VII.

72.     The unlawful employment practices complained of in paragraphs 52 through 56 were intentional.

73.     The unlawful employment practice complained of in paragraphs 52 through 56 was done with malice or with reckless indifference to Mr. Hanyok's federally protected rights.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Nicholas Hanyok respectfully requests the following relief:

A. A declaratory judgment that Defendant has discriminated against Plaintiff in violation of Title VII;

B.   A declaratory judgment that Defendant has retaliated against Plaintiff in violation of Title VII;

B. A permanent injunction enjoining Defendant and its agents, employees and/or representatives from engaging in any further acts of discrimination or retaliation as set forth above;

C. An Order requiring Defendant to initiate and implement programs that will remedy the effects of Defendant's past and present acts of discrimination and retaliation;

D. An Order requiring Defendant to initiate and implement systems to ensure that individuals who engage in protected activity pursuant to Title VII or any other anti-discrimination law are treated in a non-retaliatory manner;

E. An award of back pay, lost benefits, and other damages for lost compensation and job benefits suffered by Plaintiff in an amount to be determined at trial;

F.  An award for any actual monetary losses sustained by Plaintiff as a direct result of Defendant's Title VII violations;

G. An award of compensatory damages to Plaintiff in an amount to be determined at trial;

H.  An award of punitive damages to Plaintiff for Defendant's malicious and reckless conduct described herein in an amount to be determined at trial; and

I.  Any other equitable relief to which Plaintiff is entitled, including, but not limited to, expungement of any negative information contained in his personnel file;

J. An award of litigation costs and expenses, including reasonable attorney's fees to Plaintiff;

K. Pre-judgment and post-judgment interest; and

L. Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues so triable.

Respectfully submitted,

/s/

_____
David Manuel Baña (Bar No. 21292)
Law Office of David Baña, Esquire
129 Slade Ave
Pikesville, MD  21208
Tel.: (443) 742-2390
Fax: (410) 670-7573
E-mail: david@davidbana.com

*Attorney for Plaintiff Nicholas Hanyok*

Dated:  June 6, 2020